**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1264-20

CONCERNED CITIZENS OF
HOPEWELL AND EWING, INC.,
a not-for-profit corporation
organized under the laws of the
State of New Jersey with a mailing
address c/o Chairperson James Burd
115 Nursery Road, Titusville,
NJ 08560, and individually
THOMAS BARCLAY, who resides
at 5 Randi Way, Titusville, NJ
08560, and JAMES AND DEBRA
BURD, who reside at 115 Nursery
Road, Titusville, NJ 08560, and
MEGAN CHMIEL AND DIANA
CHMIEL, who reside at 83 Nursery
Road, Titusville, NJ 08560, and
IRENE GOLDMAN, who resides
at 45 Nursery Road, Ewing, NJ
08560, and ANDREA MATHEWS,
who resides at 107 Nursery Road,
Titusville, NJ 08560, and
CHARLES MORREALE, who
resides at 107 Nursery Road,
Titusville, NJ 08560, and MIKE
NATALE, who resides at
49 Nursery Road, Titusville,
NJ 08560, and DR. STEVE AND
COLETTE PLANK, who reside
at 24 Todd Ridge Road,

Titusville, NJ 08560, and THOMAS
STEVENSON, who resides at
103 Nursery Road, Titusville,
NJ 08560, and LISA AND
NED WEINTRAUB, who reside
at 109 Nursery Road, Titusville,
NJ 08560, and PATRICIA WHITE,
who resides at 4 Anna Marie Drive,
Ewing, NJ 08560,

     Plaintiffs-Appellants,

v.

THE TOWNSHIP COMMITTEE
OF THE TOWNSHIP OF
HOPEWELL, the governing
body of a municipality of the
State of New Jersey with offices
at 201 Washington Crossing-
Pennington Road,
Titusville, NJ 08560,

     Defendant-Respondent.

_____

DEER VALLEY REALTY, INC.,

     Intervenor-Respondent.

_____

Submitted September 12, 2022 – Decided October 3, 2022

Before Judges Whipple, Smith, and Marczyk.

On appeal from the Superior Court of New Jersey, Law
Division, Mercer County, Docket No. L-1782-19.

Potter and Dickson, attorneys for appellants (R. William Potter and Peter D. Dickson, on the brief).

Parker McCay, PA, attorneys for respondent The Township Committee of the Township of Hopewell (Steven P. Goodell, of counsel and on the brief; Linda A. Galella, of counsel; Scott T. Miccio, on the brief).

Norris McLaughlin, PA, attorneys for intervenor-respondent Deer Valley Realty, Inc. (David C. Roberts, of counsel and on the brief; James V. Mazewski, on the brief).

PER CURIAM

This appeal addresses Hopewell Township's (the Township) actions to balance its goal of affordable housing as against its plan for preservation of the Township's rural character. We affirm.

Plaintiffs are Concerned Citizens of Hopewell and Ewing, Inc., (Concerned Citizens), Thomas Barclay, James and Debra Burd, Diana and Megan Chmiel, Irene Goldman, Andrea Mathews, Charles Morreale, Mike Natale, Steve and Colette Plank, Thomas Stevenson, Lisa and Ned Weintraub, and Patricia White (collectively, plaintiffs). They appeal from a November 30, 2020 Law Division final judgment entered in favor of defendant the Township Committee of the Township of Hopewell (Township Committee) upholding a zoning change and dismissing plaintiffs' complaint with prejudice.

A-1264-20

The record informs our decision. In May 2002, the Township adopted its Master Plan. The Land Use Element of the Master Plan explains:

> Open lands zoning permits property owners in the Valley Resource Conservation [(VRC)] District a density of approximately one unit per [six] acres, provided that a significant remainder ([sixty] to [seventy] percent of the parcel) is permanently deed restricted against future residential use and remains available for agricultural or other resource conservation uses. . . .
>
> . . . .
>
> [T]he preferred development alternatives for the Valley and Mountain Resource Conservation Districts will maintain large contiguous tracts of farmland and other open lands, promote continued agricultural use of prime agricultural lands and maintain the delicate balance among the various components of the natural systems
>
> . . . .

In December 2002, the Township Committee adopted zoning Ordinance No. 02-1268, establishing a Mountain Resource Conservation zoning district and the VRC zoning district, which was substantially comprised of agricultural fields. Greenwood v. Mayor & Twp. Comm. of Hopewell, No. A-1910-06 (App. Div. Aug. 14, 2008) (slip op. at 1–3). The purpose of these districts was to:

> comprehensively address the interrelated goals of protecting groundwater quantity and quality, maintaining surface water resources, conserving the scenic rural character, addressing limiting soil

4

condition and promoting continued agricultural use opportunities, while also providing a range of development opportunities that offer alternatives for the landowner.

[Id. at 4 (quoting Ordinance No. 02-1268).]

In 2015, the Township filed a declaratory judgment action to determine its constitutional obligations to provide its fair share of affordable housing pursuant to S. Burlington Cnty. NAACP v. Mt. Laurel, 92 N.J. 158 (1983) (Mt. Laurel II). Four affordable housing developers, including CF Hopewell CC&L, LLC (CF Hopewell), intervened in that matter. Deer Valley Realty, Inc. (Deer Valley), intervenor in this matter, did not then intervene.

In 2017, the Township's first court-approved settlement with the four intervening developers concluded the Township's then-current and prospective need for affordable housing was 1,141 units, covering the years 2015 through 2025. Thereafter, the Township submitted its Housing Element and Fair Share Plan (HEFSP) to the court for approval. Deer Valley appealed the plan and filed a separate action in the Law Division challenging the Township's actions to implement the plan. In December 2017, the court conducted a Compliance Hearing, and, on January 10, 2018, entered a Third Round Judgment of Compliance and Repose.

On June 24, 2019, the Township, the four intervenors, and Deer Valley entered a Global Settlement Agreement resolving matters pertaining to the Township's and Deer Valley's actions. The agreement provided some of the affordable housing units would be located on land owned by Deer Valley while others would be located on land owned by CF Hopewell. Deer Valley also agreed to "use its best efforts to develop a hotel, conference center, [and] restaurant."

On July 1, 2019, the Township Committee introduced an ordinance "establish[ing] a new Inclusionary Multi-family and Commercial (IMF-C) [Zone] in place of the current [VRC] Zone for Block 93, Lots 19, 20, 32, 44, 45.01, 46, 60 and Block 93.05, Lots 1 and 2" (the IMF-C Ordinance). The IMF-C Ordinance allows for inclusionary multifamily residential and related commercial development, on a 213-acre tract owned by Deer Valley and CF Hopewell. Specifically, the IMF-C Ordinance permits a maximum of 625 age-restricted residential units in the IMF-C Zone, with a twenty percent set-aside for affordable housing up to 125 units.

Professional planners, Banisch Associates, Inc., prepared a July 22, 2019 memorandum used by Hopewell Township Planning Board (Planning Board) to evaluate the Township Committee's actions:

A-1264-20

The [Planning] Board has compared the proposed ordinance to the Land Use Plan Element of the 2002 Master Plan, the 2005 Circulation Plan and the July 18, 2019 Housing Plan Element. The IMF-C Zone is <u>inconsistent</u> with the VRC designation uses programmed for this site in the Land Use Plan.

Notwithstanding this Land Use Plan inconsistency, the proposed IMF-C Zone advances many goals of the Hopewell Township Master Plan. These include developing a balanced land use plan, providing for safe and convenient traffic flow and meeting the constitutional mandate to provide for the Township's fair share of the regional need for affordable housing.

The Planning Board approved Resolution No. 19-019, making findings of fact and conclusions, including:

1. The proposed ordinance establishes a new [IMF-C Zone] in place of the current [VRC] [Z]one for Block 93, Lots 19, 20, 32, 44, 45.01 46, 60 and Block 93.05, Lots 1 and 2.

2. The IMF-C zone is being established in furtherance of a settlement agreement among Hopewell Township, Deer Valley Realty, Inc., CF Hopewell CC&L, LLC and Fair Share Housing Center and provides for inclusionary multi-family development of up to 625 single family retirement homes and permits a variety of retail and services uses, including a hotel.

3. The [Planning] Board has compared the proposed ordinance to the Land Use Plan Element of the 2002 Master Plan, the 2005 Circulation Plan and the July 19, 2019 Housing Plan Element.

7

4. The IMF-C [Z]one is inconsistent with the VRC designation uses programmed for this site in the Land Use Plan.

5. Notwithstanding this Land Use Plan inconsistency, the proposed IMF-C [Z]one advances many goals of the Hopewell Township Master Plan. . . .

The Planning Board recommended the Township Committee adopt the IMF-C ordinance because it would advance several goals of the Hopewell Township Master Plan and the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-2.

After a public hearing, the Township Committee adopted the IMF-C Ordinance by a majority vote.

The Township Committee explained the purpose and vision of the IMF-C Ordinance as follows:

> The IMF-C [Zone] provides for a mixed-use community of inclusionary, age-restricted housing and non-residential commercial and office uses. . . [The Global Settlement Agreement] requires that the subject area will include a [twenty percent] set aside of all residential units (up to 125 units) which will be deed-restricted affordable to very low, low and moderate incomed households. A variety of housing types are encouraged to meet the needs of a variety of potential residents. . . .
>
> Additionally, non-residential opportunities along the [Zone's] eastern roadway frontages are provided to capitalize on the area's adjacency to minor (Scotch

Road) and primary (Interstate Route 295) arterial roadways, and the pass-by trips those roadways command. Potential customers will also be drawn from nearby major employers as well as the planned new and existing communities in the area. Neighborhood-scale uses are envisioned, rather than regionally-scaled facilities

. . . .

To implement the Township Committee's vision and achieve its stated purpose, the IMF-C Ordinance permits various non-residential uses such as pharmacies and banks if "comprehensively planned in conjunction with an inclusionary housing project and are wholly located, excluding stormwater management facilities and required buffers, within 1,300 feet of Scotch Road." It also permits "[u]tility structures and facilities needed to provide the direct service of gas, electricity, telephone, water, sewerage and cable television." The Ordinance does not permit "rapid-dispense diesel or other fuel stations suitable for use by tractor-trailers."

The ordinance also mandated a minimum of twenty percent of open space, including "wetlands, wetland buffers, riparian zone, stormwater management basins, and outdoor recreation space." Further, it requires "[a]ll dwelling units within a structure [to] be connected to approved and functioning public water and sanitary systems prior to the issuance of certificates of occupancy."

9                                                                    A-1264-20

Finally, the ordinance requires a phasing plan for all project elements, as well as a "site design demonstrating the features of a human-scale, compact, walkable and bicycle-compatible community, which encourages the conservation of environmental features and the creation of open spaces and improved neighborhood recreation areas."

The Township Committee concurrently adopted Resolution #19-251, setting forth its reasons for adopting the IMF-C Ordinance. It acknowledged that, although "the proposed IMF-C zone was inconsistent with the intent and purpose of the Land Use Plan of the [2002] Master Plan,"

> 1. The IMF-C . . . Ordinance advances many goals of the Hopewell Township Master Plan, including the following:
>
>    - The ordinance develops a balanced land use plan providing for safe and convenient traffic flow and meets the constitutional mandate to provide for the Township's fair share of the regional need for affordable housing.
>
>    - The 2002 Master Plan includes the following identified objectives under the heading "Land Use and Management["]: To provide for a reasonable balance among various land uses that respects and reflects the interaction and synergy of community life.

10

- The 2002 Master Plan provides for a variety of housing types, promotes and supports development and redevelopment of affordable housing intended to address the Township's fair share of the region's lower income housing and provides for a range of housing opportunities within the Township.

2. The [HEFSP] has been amended to provide for the proposed zoning to address the terms of the global affordable housing settlement.

3. The proposed ordinance will improve the balance of land uses sought in the Master Plan by diversifying the development along Scotch Road to include retirement housing.

4. The proposed development contemplated by the proposed zoning standards should result in a compact building layout and design.

5. The proposed rezoning will advance the goal of diversifying the housing stock and providing affordable housing to meet the constitutional obligation.

6. The proposed ordinance expands the inclusionary development node along Scotch Road and will provide affordable housing in walking distance to the jobs at Capital Health.

7. The proposed ordinance includes retirement housing which addresses the needs of aging baby boomers and serves to reduce the school demands of inclusionary development.

A-1264-20

8. The proposed ordinance includes commercial development as part of this evolving neighborhood and will serve emerging needs and provide a small component of nonresidential ratables on a site where millions of square feet of office research space were previously planned.

9. The proposed ordinance provides for a mix of residential and non-residential uses at this interchange location and is consistent with the smart growth planning objectives of the [State Development and Redevelopment Plan (State Plan)].[1]

---

[1] The State Development and Redevelopment Plan was authorized by N.J.S.A. 52:18A-200, which says that the State Plan "shall be designed to represent a balance of development and conservation objectives best suited to meet the needs of the State" and lists several requirements:

The plan shall:
a. Protect the natural resources and qualities of the State . . . ;
b. Promote development and redevelopment in a manner consistent with sound planning and where infrastructure can be provided at private expense or with reasonable expenditures of public funds. . . ;
c. Consider input from State, regional, county and municipal entities concerning their land use, environmental, capital and economic development plans . . . ;
d. Identify areas for growth, limited growth, agriculture, open space conservation and other appropriate designations that the commission may deem necessary;
e. Incorporate a reference guide of technical planning standards and guidelines used in the preparation of the plan; and

A-1264-20

In August 2019, the court held a second fairness hearing to determine whether Hopewell Township satisfied the conditions in the Third Round Judgment of Compliance and Repose and whether to approve the amended HEFSP that now included the Deer Valley land. The court considered a report of Special Master John D. Maczuga, P.P. and his direct testimony; the testimony of the Township's engineer, Mark Kataryniak, and planning consultant, Frank Banisch of Banisch Associates; arguments of counsel; public comments; and counsel for plaintiffs and their expert Peter Steck. Special Master Maczuga concluded the amended HEFSP and the Global Settlement Agreement were "fair and reasonable to the interests of low and moderate income households and created realistic opportunities for the provision for low and moderate income households during the period 1987 through July 1, 2025." Special Master Maczuga recommended the court approve both the amended HEFSP and the Global Settlement Agreement.

Thereafter, plaintiffs filed a second amended complaint in lieu of prerogative writs in which they alleged the Township: failed to provide

f. Coordinate planning activities and establish Statewide planning objectives in [certain listed areas].

[N.J.S.A. 52:18A-200.]

minimally adequate public notice (First Count); adopted an arbitrary, capricious, and unreasonable ordinance (Second Count); failed to identify substantial and credible evidence in the record to support and justify the radical rezoning of the subject property from VRC, low-density and conservation, to high density residential and commercial (Third Count); and violated the Environmental Rights Act, N.J.S.A. 2A:35A-1 to -14 (Fourth Count).

On September 27, 2019, the court entered a Final Amended Third Round Judgment of Compliance and Repose Without Conditions. The court agreed with the Special Master's findings and further found that the Township will comply with its "constitutional fair share housing obligations for the period 1987 to July 1, 2025[,] under the [Fair Housing Act] and the constitutional doctrines enunciated in the Mount Laurel cases." On October 9, 2019, the court entered a consent order granting Deer Valley leave to intervene.

The parties dismissed the Environmental Rights Act claim by stipulation. On December 9, 2019, the court denied summary judgment to plaintiffs as to the inadequate public notice claim and dismissed the First Count and paragraphs twenty-four and twenty-five of the Second Count alleging inadequate notice.

Mercer County Assignment Judge Mary C. Jacobson commenced a bench trial on the remaining issues. Weintraub, as the spokesperson for Concerned

Citizens, testified that plaintiffs were concerned about the rezoning's impact on traffic, the rural nature of the neighborhood, and the environment. Weintraub particularly objected to the prospective commercial development as "gratuitous and non-necessary" as the area already has three hotels and gas stations on either side of the highway exit.

Former Township Committee member, mayor, and official John Edwards testified as to potential sewage and nitrate contamination issues the Township Committee considered when it adopted the 2002 Master Plan. He testified the affordable housing and commercial complexes contemplated in the HEFSP would use public water from Trenton.

Former Township Committee member, Planning Board member, mayor, and deputy mayor Mary Lou Ferrara testified she was also involved in the development of the 2002 Master Plan. She testified the Township "wanted to retain the . . . rural environment. The Township wanted to promote agricultur[e] as a viable way of life[,] . . . limit traffic and its impact[,] and . . . minimize excess energy consumption."

A former state official and Planning Board member, William Connolly, echoed the previous witnesses' objections to the rezoning's creation of "sprawl development" in place of the Township's rural character.

A-1264-20

Judge Jacobson accepted plaintiffs' witness Peter Steck as an expert in land use, planning, and zoning. Steck testified the rezoned land "is almost exclusively agricultural land," and the development area has no public water and sewer services. He opined that the redevelopment area is not walkable as it is 0.8 miles from Scotch Road. In his professional opinion, the rezoning of the Deer Valley property was inconsistent with the farmland preservation plan, and the Township Committee did not consider traffic issues in voting for the rezoning. Steck concluded the IMF-C Ordinance, by including commercial uses, "is an example of bad planning." He added that the Ordinance is "procedurally defective" because the 2002 Master Plan did not contain a commercial component to the housing element. Steck also opined that the IMF-C Zone constitutes sprawl. He conceded that the farmland in the Deer Valley property in the IMF-C Zone is not in the Township's agricultural development area; the zone was residential and permitted agriculture but was not dedicated to agriculture.

Hopewell Township Director of Community Development, Township Engineer, and Zoning Officer Kataryniak testified for the Township. He is certified as a professional traffic operations engineer. The court accepted him

16

as an expert in civil engineering, traffic engineering, and community development. Kataryniak wrote the IMF-C Ordinance with Banisch.

Kataryniak testified the IMF-C zoned properties are northwest of the intersection of Scotch Road, which is a principal arterial roadway, and I-295. He explained that, after applying its credits, the Township's need for affordable housing was 653 new units, and, of those 653 units, 465 are located within the Scotch Road area. He explained that the Township had difficulty siting the affordable housing units, and it tried "to accommodate [as] best [it] could projects that would be relatively compatible with the area and not excessive in height or compactness with respect to light aerial open space between the buildings themselves."

Eventually, the Township and the intervening parties arrived at an agreement that involved building some affordable housing units on the Deer Valley property, which would decongest the area and generate less peak-hour traffic. The commercial uses in the area would include a convenience store and an automobile service station, which "wouldn't generate, necessarily, new trips to the area." Rather, it would be "convenience traffic" for vehicles already passing by. Moreover, a hotel and conference center can be built only in conjunction with development on the inclusionary housing project. In addition,

17

"accessory structures," such as gas stations, are permissible in conjunction with residential or commercial uses. Any gas station, however, would not permit use by large trucks. Overall, in Kataryniak's view, the IMF-C Ordinance involves developers establishing a "phasing plan [so that the Township may] determine that the commercial and market rate housing is built . . . in a coordinated way with the affordable housing, so that you can't have too much market or commercial development before the affordable housing development gets built."

Banisch next testified as an expert witness in professional planning and affordable housing planning for the Township. He testified the State Plan is not binding on municipalities, but "it is a guidance tool for use by both State agencies, counties and municipalities to assist in bringing better forms of development, and conservation and preservation as a comprehensive package, so that the preservation and the conservation is a byproduct of development in many respects." He explained the State Plan advocates for center-based development, which "would be a grouping of a variety of types of uses that have the synergistic relationship between when they're brought together." Banisch further explained:

> What I was saying was that when we combined healthcare uses, the employment uses, the commercial service uses, and the very dense and significant number of residential uses, we have now put together the

combination that the State Plan has envisioned in its intent as what a center would be consisting of. . . . This is the opposite of sprawl.

Addressing Steck's opinion that the rezoned redevelopment area would not be walkable, Banisch replied:

Certainly by today's standards the area is farmland. So, if you're asking is it walkable now? Not really. Will it be walkable when these developments occur, and are interconnected with one another? Absolutely. And the inherent walkability of this center is going to result [in] a couple of things. The residential neighborhoods that will be constructed both on Deer Valley's property and on the adjoining CF Hopewell properties will all have sidewalks, and a network of nature trails, including trails into and through the protected open space . . . . I'm sure as a result of the approvals that'll be coming there that the frontage of Scotch Road will also get sidewalks, that'll be an onsite improvement for somebody that will be made as part of this overall development. And I believe that pedestrians will be able to safely cross Scotch Road at the signalized intersections that exist today. So, if walkability is measured by whether a neighborhood is outfitted with sidewalks and safe ways to cross the street, I believe that we can count on that happening in the future here.

Banisch also testified that the Deer Valley property was not part of the Township's farmland preservation plan and that the IMF-C Ordinance will require the extension of public sewer and public water.

On November 25, 2020, Judge Jacobson placed her decision on the record. She explained that plaintiffs' challenge to the IMF-C Ordinance was mainly

19

against the commercial uses of the rezoned area and their claim the ordinance constituted "bad planning." She noted that the standard of review for ordinance challenges is set forth in Riggs v. Long Beach, which stated zoning ordinances are protected by "a presumption of validity, which may be overcome by a showing that the ordinance is 'clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute.'" 109 N.J. 601, 610–11 (1988) (quoting Bow & Arrow Manor v. Town of W. Orange, 63 N.J. 335, 343 (1973)). The judge further explained the zoning ordinance must satisfy and advance at least one of the purposes of the MLUL. Moreover, "[t]he ordinance should be substantially consistent with the land use plan element and the housing element of the municipality's master plan unless the requirements . . . of the [MLUL] are otherwise satisfied. . . ." To successfully challenge a zoning ordinance, the judge concluded, a plaintiff must show clear and compelling evidence to overcome the presumption of validity.

Judge Jacobson noted: "[N.J.S.A. 40:55D-62] doesn't contain a requirement that the specific inconsistency between the proposed ordinance and the [M]aster [P]lan be identified or that the reason for adopting the ordinance be grounded in the [M]aster [P]lan." Because the Township's resolution stated the reasons for deviating from the Master Plan, the judge found the requirements

under N.J.S.A. 40:55D-62 were satisfied. She further noted that the MLUL does not require an extensive report identifying inconsistencies, and the planning board did identify provisions inconsistent with the Master Plan. Thus, the court rejected plaintiff's challenge to the IMF-C Ordinance.

Additionally, Judge Jacobson found plaintiffs did not meet their burden of showing that the adoption of the IMF-C Ordinance was arbitrary and capricious. The judge summarized the testimony and made the following findings. Plaintiffs' focus on water quality, which was highlighted in the 2002 Master Plan, was unnecessary because the IMF-C Ordinance required the provision of public sewers and water. Plaintiffs' case in relation to its claim the IMF-C Ordinance constituted bad planning relied completely on Steck's testimony. But Steck's testimony was contradicted by the Township's experts, and the court questioned his credibility on cross-examination. For example, the judge noted:

> [Steck] refused to answer when pressed on cross-examination whether it made sense to have a hotel and gas station right near the interstate and right near a large hospital where family members could have relatives and friends of people staying at the hospital where it made sense.
>
> Again, [defendant's counsel] did make some headway in terms of cross-examination where . . . Steck

said it might be useful to have some commercial uses near a hospital.

By contrast, the judge found the Township's witnesses' testimony more persuasive. The court noted the Township required commercial development "to be done in a cooperative, integrated way," in conjunction with affordable housing development. Moreover, the roads in the redevelopment zone could handle mostly "pass-by traffic," meaning "people working at the hospital, living in the area, working at the offices, as . . . mentioned, pharmacy, convenience stores, that kind of thing." The court highlighted Banisch's testimony that the area was not identified as a center twenty years ago, but, since the area has evolved, the IMF-C Zone "fulfills the aims of what the [S]tate [P]lan wanted with centers." Furthermore, although the ordinance was inconsistent with the Master Plan, the Planning Board "agreed that the IMF-C uses were an appropriate deviation from the [M]aster [P]lan . . . helping to satisfy the affordable housing obligation for [the Township] and then having commercial development that would address the needs of the new residents and the employees in the area." As a result, Judge Jacobson found the Township's representatives' testimony reasonable and credible.

Overall, Judge Jacobson decided that the Township's position was "by far and away the better one," and plaintiffs' testimony "did not provide the kind of

22

evidence that is necessary to show that . . . the IMF-C [O]rdinance is arbitrary,

capricious and unreasonable."  Therefore, she concluded:

> [T]he [c]ourt finds that for the reasons [stated] earlier that the ordinance does promote the purposes of the zoning as required by the [MLUL] at N.J.S.A. 44:55D-2 and Riggs, [109 N.J. at 612], and that the reasons given in the ordinance are, in fact, supported by the ordinance itself as was (indiscernible) in the expert's testimony.  [T]he ordinance is obviously going to support affordable housing (indiscernible) one purpose of zoning in the [MLUL].  That certainly is one of them, but the [c]ourt finds that there is not any conflict with the development in terms of harming the general welfare of the state or neighboring municipalities.  You know, again the proximity to I-295 is . . . one of the other reasons that development has come here and is consistent with the area in general to provide more higher residential densities as a part of Hopewell that's close to the interchange of 295 rather than farther away where . . . a large amount of the agricultural area is located.
>
> And the [c]ourt finds that the aim of the ordinance is to provide a desirable visual environment with good design, walkability and the ordinance being appropriate for good visual impact.
>
> And so the record in this case is one that the [c]ourt is convinced provides support for the ordinance and that there is—that plaintiff[s'] case does not show that the ordinance is arbitrary or capricious.

On November 30, 2020, the court entered final judgment in favor of the

Township.  This appeal followed.

23

Plaintiffs asserts the IMF-C Ordinance violates the New Jersey Constitution and is, therefore, arbitrary and capricious. Specifically, plaintiffs argue:

> because the IMF-C [O]rdinance provides for intensive residential and jaw-dropping variety of commercial uses on previously-zoned VRC prime agricultural property contrary to State Plan Planning Area 3 (fringe) guideline and contrary to the Master Plan, and has neither sewerage service nor public potable water service, and is therefore unsuitable for such a massive development, the court must judge the ordinance as arbitrary and capricious, unreasonable, and contrary to fundamental sound land-use planning and zoning.

Plaintiffs' argument relies on the incorrect legal standard and otherwise lacks merit. "[Z]oning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 558 (2018) (alteration in original) (quoting Price v. Himeji, LLC, 214 N.J. 263, 284 (2013)). "As a general principle, a municipal ordinance is afforded a presumption of validity, and the action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff challenging the action." Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015) (citing Price, 214 N.J. at 284). "Only a showing of 'clear and compelling evidence' may

overcome this presumption." Cona v. Twp. of Washington, 456 N.J. Super. 197, 215 (App. Div. 2018) (citing to Spring Lake Hotel & Guest House Ass'n. v. Spring Lake, 199 N.J. Super. 201, 210 (App. Div. 1985)). "Courts should not question the wisdom of an ordinance, and if the ordinance is debatable, it should be upheld." Riggs, 109 N.J. at 611 (citing to Bow & Arrow Manor, 63 N.J. at 343).

Moreover, "[i]n construing the meaning of a statute, an ordinance, or . . . case law, [appellate] review is de novo." 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015) (citing to Farmers Mut. Fire Ins. Co. of Salen v. N.J. Prop. Liab. ins. Guar. Ass'n, 215 N.J. 522 (2013)). "[A] board's decision regarding a question of law . . . is subject to a de novo review by the courts, and is entitled to no deference since a zoning board has 'no peculiar skill superior to the courts' regarding purely legal matters." Dunbar Homes, 233 N.J. at 559 (quoting Chicalese v. Monroe Twp. Planning Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)).

In Riggs, our Supreme Court explained:

> Although the judicial role is circumscribed, a court may declare an ordinance invalid if in enacting the ordinance the municipality has not complied with the requirements of the statute. . . . Generally, a zoning ordinance must satisfy certain objective criteria. First, the ordinance must advance one of the purposes of the

A-1264-20

Municipal Land Use Law as set forth in N.J.S.A. 40:55D-2. . . . Second, the ordinance must be "substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements," N.J.S.A. 40:55D-62, unless the requirements of that statute are otherwise satisfied. Third, the ordinance must comport with constitutional constraints on the zoning power, including those pertaining to due process. . . equal protection . . . and the prohibition against confiscation . . . . Fourth, the ordinance must be adopted in accordance with statutory and municipal procedural requirements. . . .

[109 N.J. at 611–12 (internal citations omitted).]

"The limited scope of appellate review requires deference to the trial court's findings when supported by adequate, substantial, and credible evidence." Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293 (2001).

Based upon our review and for the reasons outlined by Judge Jacobson, we also conclude plaintiffs did not meet their burden to show the Township's adoption of the IMF-C Ordinance was arbitrary, capricious, or unreasonable under Riggs, and plaintiffs' argument fails because they rely on the incorrect legal standard.

Under the first prong of Riggs, 109 N.J. at 611, having found the Township's experts more credible than plaintiffs' and following a review of the Ordinance itself, the court properly concluded the IMF-C Ordinance advanced

at least one purpose of the MLUL, N.J.S.A. 40:55D-2. First, although the trial court did not provide the specific statutory basis for its conclusion that the IMF-C Ordinance will support affordable housing as one purpose of the MLUL, we conclude the trial court nonetheless applied the correct construction of the statute. The first purpose of the MLUL is "to encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare," N.J.S.A. 40:55D-2(a). The provision of affordable housing unquestionably advances the general welfare. See Mt. Laurel II, 92 N.J. at 208–09. Furthermore, substantial credible evidence supports the trial court's conclusion that the Ordinance will support affordable housing as it will require at least twenty percent of new housing units to be affordable.

Second, substantial credible evidence supports the court's finding that the IMF-C Ordinance "does not conflict with the development and general welfare of neighboring municipalities, the county and the State as a whole," N.J.S.A. 40:55D-2(d). The court pointed to the IMF-C Zone's proximity to I-295, which has spurred development "consistent with the area in general to provide more higher residential densities" closer to I-295 and farther from the agricultural areas.

27

Third, substantial credible evidence supports the court's finding that the IMF-C Ordinance will "promote a desirable visual environment through creative development techniques and good civic design and arrangement," N.J.S.A. 40:55D-2(i), by incorporating "good design, walkability . . . and good visual impact." Indeed, the Ordinance requires "site design demonstrating the features of a human-scale, compact, walkable and bicycle-compatible community, which encourages the conservation of environmental features and the creation of open spaces and improved neighborhood recreation areas." Thus, the court properly construed the MLUL and relied on substantial credible evidence to conclude that the IMF-C Ordinance satisfied at least one purpose of the statute.

Next, under the second prong of Riggs, 109 N.J. at 611, the court properly found that, despite the IMF-C Ordinance's inconsistency with the Master Plan, the Township satisfied N.J.S.A. 40:55D-62.

N.J.S.A. 40:55D-62(a) states, in pertinent part:

> [T]he governing body may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance . . . .

"Inconsistency between a zoning amendment and the [M]aster [P]lan is not fatal to a zoning amendment." Willoughby v. Planning Bd. of Twp. of Deptford, 326 N.J. Super. 158, 165 (App. Div. 1999) (Willoughby II). However, it does trigger three procedural requirements as set forth in N.J.S.A. 40:55D-62(a). First, N.J.S.A. 40:55D-62(a) "requires an initial finding of inconsistency by the governing body when it adopts a zoning amendment which is in fact determined to be inconsistent with the [M]aster [P]lan." Willoughby v. Wolfson Grp., 332 N.J. Super. 223, 226–27 (App. Div.), certif. denied, 165 N.J. 603 (2000) (Willoughby III). In that case, the governing body did not do so; thus, the trial court awarded summary judgment to the challengers of the zoning ordinance. Id. at 226–27. We affirmed, concluding that "before adopting a zoning amendment inconsistent with the master plan, the governing body must expressly recognize the inconsistency." Id. at 229. Second, a "majority of the full authorized membership of the governing body" must affirmatively vote for the zoning ordinance inconsistent with the Master Plan. Id. at 226. Third, "the governing body's reasons 'for so acting' must be expressed 'in a resolution and recorded in its minutes.'" Ibid.

Here, substantial credible evidence in the record supports the court's findings that the Township complied with N.J.S.A. 40:55D-62(a). The court

29

noted the Planning Board, despite "identify[ing] provisions that were inconsistent with the [M]aster [P]lan," recommended the adoption of the IMF-C Ordinance. The Planning Board did so in its July 22, 2019 memorandum to the Township Committee, and by approving Resolution No. 19-019 stating, in pertinent part:

> 1. The proposed ordinance establishes a new . . . (IMF-C) [Zone] in place of the current . . . (VRC) [Z]one for Block 93, Lots 19, 20, 32, 44, 45.01 46, 60 and Block 93.05, Lots 1 and 2.
>
> . . . .
>
> 3. The Board has compared the proposed ordinance to the Land Use Plan Element of the 2002 Master Plan, the 2005 Circulation Plan and the July 19, 2019 Housing Plan Element.
>
> 4. The IMF-C zone is inconsistent with the VRC designation uses programmed for this site in the Land Use Plan.

The Township Committee acknowledged those inconsistencies in Resolution #19-251, even though the court opined the Planning Board's report "could have been more detailed." A majority of the Township Committee, or three of the five members, voted to adopt the IMF-C Ordinance, and Resolution #19-251. Thus, the trial court did not err.

We also reject plaintiffs' third argument that the governing body must set forth "detailed reasons for recommending and enacting a zoning ordinance which was so inconsistent with the Master Plan." As the trial court correctly explained: "[N.J.S.A. 40:55D-62] doesn't contain a requirement that the specific inconsistency between the proposed ordinance and the [M]aster [P]lan be identified or that the reason for adopting the ordinance be grounded in the [M]aster [P]lan."

Neither the plain text of the statute nor the cases cited support plaintiffs' contention that municipalities must provide "detailed reasons" for adopting zoning ordinances inconsistent with their master plans. In Willoughby II, we concluded that ordinance was inconsistent with the master plan and the governing board did not acknowledge the inconsistency. 326 N.J. Super. at 162, 165. We remanded the matter for the trial court to determine whether, despite not finding the zoning ordinance inconsistent, the board complied with N.J.S.A. 40:55D-62 by explaining its reasons in its resolution and "Whereas" clauses in the ordinance. Id. at 166. And, in Willoughby III, earlier discussed, we required municipalities enacting zoning ordinances inconsistent with their master plans to first "expressly recognize the inconsistency." 332 N.J. Super. at 229. Neither case concluded N.J.S.A. 40:55D-62 requires municipalities to give "detailed

31

reasons" for adopting inconsistent zoning ordinances, and the trial court did not err in concluding the Township satisfied N.J.S.A. 40:55D-62 in adopting the IMF-C Ordinance.

Under the third prong of Riggs, 109 N.J. at 611–12, plaintiffs did not claim the IMF-C Ordinance did not "comport with constitutional constraints on the zoning power, including those pertaining to due process . . . equal protection . . . and the prohibition against confiscation."  Rather, plaintiffs incorrectly rely on Mt. Laurel II for the proposition that the IMF-C Ordinance violates "constitutionally mandated planning strictures."  Plaintiffs discuss the Court's dicta on sound planning at length and highlight the following excerpt: "The Constitution of the State of New Jersey does not require bad planning.  It does not require suburban spread.  It does not require rural municipalities to encourage large scale housing developments."  92 N.J. at 238.

Mt. Laurel II's dicta does not provide a cogent argument for why the IMF-C Ordinance is invalid.  Certainly, the Court has said, "[t]he Constitution of the State of New Jersey does not require bad planning."  Ibid.  But plaintiffs still bear the burden of overcoming the IMF-C Ordinance's presumption of validity by a showing of clear and convincing evidence. Grabowsky, 221 N.J. at 551;

A-1264-20

Cona, 456 N.J. Super. at 215; Riggs, 109 N.J. at 611.  It is not enough to call the IMF-C Ordinance "bad planning."

Mt. Laurel II addressed issues such as which municipalities are subject to the constitutional obligation to provide affordable housing, 92 N.J. at 239–40; whether inclusionary devices are constitutional, id. at 271; why a municipality may deny a builder's project "clearly contrary to sound land use planning," id. at 279–80; and how "low[-]density limitations" may violate the Mt. Laurel doctrine, id. at 314–15.  Here, the issue of whether the Township has a Mt. Laurel obligation has been litigated.  The court approved the settlement establishing the Township's prospective affordable housing needs.  There has been no appeal of that final judgment.  Therefore, the trial court did not err in not finding a constitutional violation under the Mt. Laurel doctrine.

Finally, under the fourth prong of Riggs, 109 N.J. at 612, plaintiffs' claims alleging inadequate public notice were dismissed, and plaintiffs do not appeal this issue.  Therefore, the court did not err in not addressing this issue.

Plaintiffs' remaining arguments also lack merit.  Plaintiffs argue the Global Settlement Agreement and the rezoning of the Deer Valley property may have been tainted by an improper real estate transaction.  Plaintiffs did not raise

this issue before the trial judge. This court need not consider it for the first time on appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

We reject plaintiffs' argument that the trial court erred in finding the Township satisfied the MLUL's requirements for adopting a zoning ordinance inconsistent with its master plan. The MLUL's plain text and this court do not require a municipality to provide "detailed reasons" why it adopted a zoning ordinance inconsistent with its master plan.

Finally, we reject plaintiffs' argument that the court erred in not making findings and conclusions on the basis of Mt. Laurel II. We conclude the court's factual and credibility findings and conclusions of law were sound. To the extent we have not addressed plaintiffs' remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1264-20